■ FILIPPO PINO et al., Respondents-Appellants, v KURT HARNISCHFEGER, Also Known as KURT H. HARNISCHFEGER, Individually and Doing Business as JACOBSON DEVELOPMENT, Also Known as JACOBSEN DEVELOPMENT, et al., Appellants-Respondents. (Appeal No. 1.) [840 NYS2d 504]—

Appeals and cross appeal from an order of the Supreme Court, Monroe County (Kenneth R. Fisher, J.), entered July 5, 2006. The order, among other things, granted that part of plaintiffs' motion for an order cancelling and discharging the mechanic's lien filed by defendant DDS Engineers, LLP and denied the cross motion of that defendant for summary judgment or, alternatively, for leave to amend its answer and for a conditional order striking plaintiffs' pleadings or for another remedy available as a discovery sanction.

It is hereby ordered that said appeal from the order insofar as it concerns the mechanic's lien be and the same hereby is unanimously dismissed (*see Canh Du v Hamell*, 19 AD3d 1000, 1001 [2005]) and the order is modified on the law by granting the motion in its entirety and dismissing in their entirety the counterclaims of defendant Kurt Harnischfeger, also known as Kurt H. Harnischfeger, individually and doing business as Jacobson Development, also known as Jacobsen Development, and as modified the order is affirmed with costs to plaintiffs payable by that defendant.

Memorandum: Plaintiffs entered into a contract pursuant to which they agreed to sell to Kurt Harnischfeger approximately 28.9 acres of vacant land on Harris Road in the Town of Penfield (Town), to be developed as a residential subdivision. Although subdivision approval was obtained from the Town for 12 lots, the transaction never closed because of various disagreements concerning certain provisions that were to be included in the purchase money bond and mortgage. Harnischfeger hired defendant DDS Engineers, LLP (DDS) to perform engineering work for subdivision approval, and it appears on the record before us that he failed to pay the outstanding balance owed to DDS for those services. As a result, DDS filed a mechanic's lien against plaintiffs' property and it thereafter filed an extension of the mechanic's lien, extending the lien for a one-year period.

Plaintiffs commenced this action against defendant Kurt Harnischfeger, also known as Kurt H. Harnischfeger, individually and doing business as Jacobson Development, also known as Jacobsen Development (Harnischfeger), seeking damages for breach of contract and against DDS for the alleged wrongful encumbrance of their property and seeking cancellation of the mechanic's lien. Harnischfeger asserted counterclaims for, inter alia, specific performance of the contract and breach of contract, and DDS asserted a counterclaim seeking damages in an amount equal to its unpaid bill for engineering services based upon the theory of unjust enrichment. Plaintiffs thereafter moved for an order pursuant to Lien Law §§ 17 and 19 cancelling and

discharging the mechanic's lien filed by DDS. In addition, they sought to strike Harnischfeger's request for punitive damages, asserted in the wherefore clause but also erroneously asserted as a counterclaim (*see Collision Plan Unlimited v Bankers Trust Co.*, 63 NY2d 827, 831 [1984], *rearg denied* 64 NY2d 755 [1984]), and they sought summary judgment dismissing Harnischfeger's remaining counterclaims. DDS cross-moved for summary judgment pursuant to Lien Law § 54. Alternatively, DDS sought leave to amend its answer (incorrectly referred to by DDS as its "complaint") and requested a conditional order striking plaintiffs' pleadings or for another "remedy available" as a discovery sanction unless plaintiff Filippo Pino agreed to submit to a deposition on a date certain, to be designated by Supreme Court. By the order in appeal No. 1, the court, inter alia, granted that part of plaintiffs' motion for an order cancelling and discharging the mechanic's lien filed by DDS and denied the cross motion of DDS in its entirety. By the order in appeal No. 2, the court, inter alia, directed the Clerk of Monroe County to vacate and cancel the mechanic's lien.

DDS subsequently moved, inter alia, for leave to reargue its cross motion and plaintiffs' motion in appeal No. 1, and plaintiffs cross-moved to dismiss the counterclaim of DDS, for unjust enrichment, and to cancel the notice of pendency filed by DDS. By the order in appeal No. 3, the court denied the motion of DDS for "reargument/renewal" and granted plaintiffs' cross motion to dismiss the counterclaim of DDS and to cancel the notice of pendency filed by DDS, although the court stayed both that part of its order cancelling the notice of pendency and that part of its prior order vacating and cancelling the mechanic's lien "pending appeal." Although the document on appeal in appeal No. 4 is denominated a decision and order, we conclude that it is a mere decision because it states in the penultimate sentence, "Settle order accordingly, with the stay requested by DDS." No appeal lies from a mere decision (*see Kuhn v Kuhn*, 129 AD2d 967 [1987]) and, in any event, the issue of the appealability of the "decision and order" in appeal No. 4 is of no moment because the order in appeal No. 3 implements the "decision and order" in appeal No. 4.

Addressing first the order in appeal No. 2, we conclude that, inasmuch as DDS failed to commence a timely action to foreclose its mechanic's lien before it expired pursuant to Lien Law § 17, the court properly granted that part of plaintiffs' motion to vacate and cancel the lien (*see Zoerb & Co. v Young Fire Equip. Co.*, 134 AD2d 826 [1987]). DDS contends that, affording its counterclaim a liberal reading, it states a cause of action to

foreclose a lien under article 3 of the Lien Law. We reject that contention. DDS did not demand that relief in its answer, and the counterclaim of DDS, for unjust enrichment, merely sought money damages. Plaintiffs thus had no notice that such relief would be sought and, in these circumstances, it would be fundamentally unfair to allow DDS the equitable remedy of foreclosure (*see generally Related-Falls Bridge Ltd. Partnership v Falls Bridge Plaza Assoc.*, 177 AD2d 275, 276 [1991]). Although plaintiffs may have acknowledged the existence of a valid mechanic's lien, such an acknowledgment is not the equivalent of an acknowledgment of the existence of an action to foreclose and enforce that lien.

We conclude with respect to the order in appeal No. 1 that the court properly denied that part of the cross motion of DDS for leave to amend its answer to assert a counterclaim for foreclosure of its mechanic's lien. Once a mechanic's lien expires pursuant to Lien Law § 17, it may not be revived or further extended by court order (*see Zoerb & Co.*, 134 AD2d 826 [1987]). Also contrary to defendants' contentions, the court neither abused its discretion nor improvidently exercised its discretion in denying that part of the cross motion of DDS seeking an order sanctioning plaintiffs for failing to complete a deposition. On this record, we perceive no "willful or contumacious" conduct by plaintiffs in the failure to complete plaintiff Filippo Pino's deposition (*Wolfson v Calamel*, 162 AD2d 959, 959-960 [1990]). Further, Harnischfeger did not move to sanction plaintiffs for frivolous conduct, and thus the court properly declined to grant Harnischfeger's "informal request" for that relief (*Blam v Netcher*, 17 AD3d 495, 496 [2005]). Additionally, it cannot be said that the court erred in sua sponte issuing a new discovery scheduling order. We note in particular that "every court retains continuing jurisdiction to reconsider its prior interlocutory orders during the pendency of the action" (*Liss v Trans Auto Sys.*, 68 NY2d 15, 20 [1986]; *see Lidge v Niagara Falls Mem. Med. Ctr.* [appeal No. 2], 17 AD3d 1033, 1034 [2005]), and "[i]t is well settled that the court is vested with broad authority to supervise discovery" (*Faragiano v Town of Concord*, 294 AD2d 893, 893 [2002]). We further conclude that the court properly granted that part of plaintiffs' motion seeking to strike Harnischfeger's request for punitive damages because there are no factual allegations in Harnischfeger's answer alleging "a fraud evincing a 'high degree of moral turpitude' and demonstrating 'such wanton dishonesty as to imply a criminal indifference to civil obligations' . . . 'aimed at the public generally' " that may form the basis for an award of punitive damages in a breach of contract action (*Rocanova v Equitable Life Assur. Socy. of U.S.*, 83 NY2d 603, 613 [1994]).

We further conclude, however, that the court erred in denying those parts of plaintiffs' motion for summary judgment dismissing Harnischfeger's counterclaims for specific performance and breach of contract, and that the court instead should have granted plaintiffs' motion in its entirety and dismissed Harnischfeger's counterclaims in their entirety. We therefore modify the order in appeal No. 1 accordingly.

"If an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract" (*Cobble Hill Nursing Home v Henry & Warren Corp.*, 74 NY2d 475, 482 [1989], *rearg denied* 75 NY2d 863 [1990], *cert denied* 498 US 816 [1990]; *see Joseph Martin, Jr., Delicatessen v Schumacher*, 52 NY2d 105, 109-110 [1981]). The price and terms of payment are essential elements of a contract for the sale of real property (*see Donner v Septimus*, 137 AD2d 484, 485 [1988]; *Janowitz Bros. Venture v 25-30 120th St. Queens Corp.*, 75 AD2d 203, 215 [1980]). "Where an essential element of the contemplated contract, such as the price . . .[,] is unsettled and left for future negotiations, the agreement is unenforceable under the [s]tatute of [f]rauds" (*Sheehan v Culotta*, 99 AD2d 544, 545 [1984]; *see Willmott v Giarraputo*, 5 NY2d 250, 253 [1959]). Here, the contract provided that the purchase price was $455,000 "[r]egardless of the number of lots for which Buyer gets approval." The purchase price was to be paid by the buyer at closing by the delivery of a purchase money bond and mortgage in the amount of the full purchase price to the seller. The only provision for payment of the purchase money mortgage was that it be paid "in the amount of $35,000 per lot upon the closing of each lot by Buyer." Only 12 lots were approved for the subdivision, however, and, thus, upon the closing of all of the lots, the seller would receive only the amount of $420,000. There was no contractual provision accounting for that shortfall to the seller, e.g., a provision requiring the principal balance of the mortgage to be paid by a certain date in the future. The failure to include some formula or methodology in the contract whereby plaintiffs would be paid the full contract price at some ascertainable date in the future renders the contract unenforceable under the statute of frauds (*see generally Cobble Hill Nursing Home*, 74 NY2d at 483; *Willmott*, 5 NY2d at 253; *Sheehan*, 99 AD2d at 545).

Finally, with respect to the order in appeal No. 3, DDS did not address in its brief on appeal any issue concerning the propriety of the dismissal of its counterclaim, for unjust enrichment, and thus is deemed to have abandoned any such issue (*see Ciesinski v Town of Aurora*, 202 AD2d 984 [1994]). Present—Gorski, J.P., Smith, Centra, Lunn and Fahey, JJ.