■ MICHAEL JIANNARAS, Plaintiff, v MIKE ALFANT et al., Appellants, et al., Defendant. KATHLEEN M. ACKERMAN et al., Nonparty Respondents. [1 NYS3d 332]—

In an action, inter alia, for declaratory and injunctive relief, the defendants Mike Alfant, Mike Kopetski, J. Allen Kosowski, James Meyer, Afsaneh Naimollah, Thomas Weigman, and On2 Technologies appeal from an order of the Supreme Court, Queens County (Grays, J.), entered July 25, 2012, which, upon a decision of the same court dated January 10, 2012, made after a hearing, denied their motion, made jointly with the plaintiff, to approve a settlement of a proposed non-opt-out class action.

Ordered that the order is affirmed, with costs.

The instant appeal arises from a merger between the defendant On2 Technologies, Inc. (hereinafter On2), a publicly held Delaware corporation that developed video compression technology, and Google, Inc. (hereinafter Google), the global technology conglomerate specializing in Internet-related services. On August 4, 2009, On2 entered into a merger agreement with Google and Oxide, Inc., a subsidiary of Google, pursuant to which Google agreed to acquire each share of On2 common stock in exchange for 60 cents worth of Google Class A common stock. At that time, the proposed transaction was valued at approximately $106.5 million.

On August 7, 2009, the plaintiff, on behalf of himself and other similarly situated shareholders of On2, commenced the instant action, alleging that On2's board of directors breached its fiduciary duties to the shareholders by, inter alia, failing to ensure that the shareholders would receive maximum value for their shares. Among other things, the plaintiff sought certification of a class to prosecute the matter as a class action, a declaration that the merger agreement was unlawful and unenforceable, rescission of the merger agreement, and injunctive relief. In August 2009, other shareholders of On2 (hereinafter collectively the Delaware plaintiffs) commenced similar actions in the Delaware Court of Chancery.

On February 22, 2010, the parties to this action, as well as the Delaware plaintiffs, proposed a settlement, pursuant to which they agreed that "solely for the purpose of effectuating the [s]ettlement," the instant action "may be maintained . . . as a non-opt out class action." The settlement provided, inter alia, for dismissal of the New York and Delaware actions in their entirety, with prejudice, and a release of "any and all" merger-related claims. The proposed settlement class encompassed "all persons and entities who held shares of the common stock of On2 . . . at any time between August 4, 2009 and February 19, 2010."

Upon notice of the proposed settlement to all record holders of On2 common stock, 226 of those shareholders filed objections

to the proposed settlement. The objectors contested the proposed settlement, claiming that it contained "an astonishingly broad" release that would "unlawfully restrict" and "unduly burden" the rights of shareholders to pursue their own individual claims for damages. Following a fairness hearing, the Supreme Court denied approval of the settlement because it did not afford nonresident class members the opportunity to opt out of the settlement in order to preserve their right to assert claims for damages. We affirm.

The determination of whether a lawsuit warrants certification as a class action under the relevant statutory criteria rests within the sound discretion of the trial court (*see City of New York v Maul*, 14 NY3d 499, 509 [2010]; *Small v Lorillard Tobacco Co.*, 94 NY2d 43, 52 [1999]), and must be grounded upon a consideration of the factors set forth in CPLR 901 (a) and 902. The five factors enumerated in CPLR 901 (a) are: (1) the class is so numerous that joinder of all members is impractical, (2) the existence of common questions of fact or law that predominate over questions affecting individual members, (3) typicality of the class representative's claims or defenses with that of the class, (4) adequacy of protecting the class by the representative, and (5) superiority of the class action to other available methods of adjudicating the controversy. If the prerequisites of CPLR 901 are satisfied, CPLR 902 requires consideration of: (1) whether class members have an individual interest in controlling the litigation, (2) the impracticality or inefficiency of prosecuting or defending separate actions, (3) the extent and nature of existing litigation, (4) the desirability or undesirability of concentrating the claim in a particular forum, and (5) difficulties likely to be encountered in managing the class.

As recognized by the Court of Appeals more than two decades ago in *Matter of Colt Indus. Shareholder Litig.* (77 NY2d 185 [1991]), the New York statutes also look to the relief sought by the class in determining what process is due the class members (*see id.* at 194). In *Matter of Colt*, the Court of Appeals considered whether a class-action complaint demanding predominantly equitable relief required the court to give class members an opportunity to opt out. Therein, the Court held that class members have no constitutional due process right to opt out of a class that seeks predominately equitable relief, as long as the prerequisites for the certification of a class action, i.e., numerosity, predominance, typicality, adequacy of representation, and superiority of a class action over other forms of action are satisfied (*see id.* at 195-196). However, the Court of Appeals recognized that " '[o]ne of the strengths of CPLR article

9 is its flexibility. A decision granting class action status is not immutable and if later events indicate that the decision should be reversed, altered or amended, requisite relief is authorized' " (*id.* at 196, quoting *Friar v Vanguard Holding Corp.*, 78 AD2d 83, 100 [1980]). Moreover, unlike class actions rooted in rule 23 of the Federal Rules of Civil Procedure, CPLR article 9 does not specifically enumerate or identify any particular category of case in which an opportunity for a class member to opt out is mandated (*see Matter of Colt Indus. Shareholder Litig.*, 77 NY2d at 194-195). Instead, the New York statute clearly contemplates that a trial court may choose to exercise discretion to permit a class member to opt out of a class "[w]hen appropriate" (CPLR 903). From a practical standpoint, *Matter of Colt* recognizes the flexibility, discretion, and wide-ranging authority available to the Supreme Court in fashioning an appropriate remedy to fit the myriad of scenarios presented in the context of class-action/ opt-out litigation.

In *Matter of Colt*, the Court of Appeals stated that, while the settlement at issue there afforded class members relief that was essentially equitable in nature, it "exacted as a price" for that relief a concession that the class members could not pursue damage claims based on the corporate merger that was the subject of that proceeding (*Matter of Colt Indus. Shareholder Litig.*, 77 NY2d at 197). To the extent that the terms of the settlement in *Colt* had an impact upon the entirely separate and distinct right of the class members to pursue damages claims, due process concerns became particularly relevant (*see id.*). Thus, the Court of Appeals held that the Supreme Court erred in approving a settlement that purported to extinguish the rights of out-of-state class members to litigate damages claims, without giving them a chance to opt out of the class. The Court of Appeals emphasized that the mere fact that the relief initially demanded was largely equitable should not permit a court to bind litigants to a settlement that eliminated constitutionally protected property interests without due process.

We conclude that *Matter of Colt* is analogous to the instant case, and is controlling. Our dissenting colleague acknowledges that the pertinent circumstances presented in *Colt* are also implicated here. Indeed, as in *Colt,* the settlement agreement at issue here impinges upon a distinct right, namely the right to pursue a claim for damages. Nevertheless, the dissent concludes that, here, any claim for money damages is "incidental" to the equitable relief sought and, thus, that class members should not be excluded. In his dissent, our colleague primarily relies upon cases that apply rule 23 of the Federal Rules of Civil Procedure

(see *Wal-Mart Stores, Inc. v Dukes*, 564 US —, 131 S Ct 2541 [2011]; *Allison v Citgo Petroleum Corp.*, 151 F3d 402 [5th Cir 1998]). He also states that he does not "endorse granting opt-out rights only to out-of-state class members."

Under the doctrine of stare decisis, "once a court has decided a legal issue, subsequent appeals presenting similar facts should be decided in conformity with the earlier decision" (*People v Bing*, 76 NY2d 331, 337-338 [1990]). Notably, this Court is a court of precedent and is bound to follow the holding of the Court of Appeals (*see People v Turner*, 5 NY3d 476, 482 [2005]; *People v Rivera*, 5 NY3d 61, 65 n 2 [2005]; *Mountain View Coach Lines v Storms*, 102 AD2d 663, 664 [1984]). In *Matter of Colt*, the Court of Appeals spoke on the precise issue before us on this appeal. Although it is within the province of the Court of Appeals to reexamine its earlier precedent and determine whether a compelling justification exists to overrule that precedent (*see People v Peque*, 22 NY3d 168, 194 [2013]), that right of reexamination is not within our province. Simply stated, this Court cannot discount or disregard the Court of Appeals' determination in *Matter of Colt* and, if there is to be any shift in that precedent, the change in the law is for the Court of Appeals to pronounce.

The appellants' remaining contention is without merit.

Accordingly, based on the Court of Appeals' holding in *Matter of Colt*, the Supreme Court providently exercised its discretion in declining to approve the subject proposed settlement that would have extinguished the right of out-of-state class members to litigate damage claims without giving them the opportunity to opt out of the class. Rivera, J.P., Balkin and Cohen, JJ., concur.

Dickerson, J., dissents, and votes to reverse the order and grant the appellants' motion, made jointly with the plaintiff, to approve a settlement of a proposed non-opt-out class action, with the following memorandum: The defendant On2 Technologies, Inc. (hereinafter On2), is a Delaware corporation that develops video compression and other technologies which enable the creation, transmission, and playback of multimedia on "resource-limited environments," such as cellular networks and the Internet. According to the plaintiff, on or about August 4, 2009, On2 and the defendant Google, Inc. (hereinafter Google), entered into a proposed merger agreement, pursuant to which Google was to acquire each share of On2 common stock in exchange for 60 cents worth of Google Class A common stock.

In August 2009, the plaintiff, who owned shares of On2 common stock, commenced this class action, on behalf of himself and other similarly situated shareholders of On2 stock, against

Google, as well as On2 and certain former members of On2's board of directors (hereinafter collectively the On2 defendants). The plaintiff alleged that the On2 board of directors breached its fiduciary duty to shareholders by "(i) failing to ensure that they will receive maximum value for their shares; (ii) failing to conduct an appropriate sale process; (iii) implementing preclusive deal protections that will inhibit an alternate transaction; (iv) favoring the interests of certain 'insider' shareholders over the interests of other shareholders; (v) falsely portraying the Proposed Transaction as one in which the On2 shareholders will receive Google stock in exchange for their shares; and (vi) attempting to extinguish shareholder derivative standing to evade liability for admitted accounting improprieties that resulted in the generation of false financial statements."

The plaintiff sought, among other things, a judgment declaring that the individual defendants breached their fiduciary duty to shareholders in entering into the merger agreement, which, as a result of that breach, was rendered unenforceable; the rescission of the merger agreement; a permanent injunction prohibiting the defendants from consummating the merger in the absence of a process by which the highest price could be obtained for the shares of On2; and the imposition of a constructive trust in favor of the plaintiff and the class on any benefits improperly received by the defendants as a result of their wrongful conduct.

Based on a memorandum of understanding, the parties entered into a stipulation and agreement of settlement dated February 22, 2010. Pursuant to this stipulation, the parties sought certification of a non-opt-out class, consisting of all persons and entities who held shares of On2 common stock at any time between August 4, 2009, and February 19, 2010. Pursuant to the settlement agreement, the parties agreed to the dismissal of this action, the dismissal of a similar action commenced in Delaware, and the release of all claims arising out of or related to the merger or either of the two actions.

In an order dated May 27, 2010, the Supreme Court, Queens County (Grays, J.), preliminarily certified the action as a non-opt-out class action, for purposes of settlement only, on behalf of a class consisting of all persons and entities who held shares of On2 common stock at any time between August 4, 2009, and February 19, 2010. The court set the matter down for a "fairness hearing" to be held on October 13, 2010, to determine, among other things, whether the settlement agreement should be approved by the court as fair, whether final judgment should be entered pursuant to the stipulation dismissing the New York

action in its entirety, with prejudice, and releasing all merger-related claims, and whether final certification should be granted to the settlement class.

On or about September 28, 2010, 226 shareholders of On2 common stock filed objections to the proposed settlement agreement. The objectors also provided written notice of their intention to appear at the fairness hearing. The objectors asserted, among other things, that the settlement imposed substantial costs on shareholders, that the settlement offered few benefits to shareholders, and that, at the least, the court should ensure that the settlement did not bar class members' individual claims against On2, its officers and board members, and Google. The objectors noted that courts have granted opt-out requests at the time of approval of class-action settlements. The objectors also suggested that the court either revise the settlement agreement so that it could not be read to bar claims of On2 shareholders for damages "or other forms of particularized relief," or, in the alternative, so that it directed the dismissal of the action but not the release of all claims.

In support of the settlement agreement, and in opposition to the objections, the On2 defendants filed a memorandum dated October 8, 2010, in which they asserted that the settlement agreement should be approved because the On2 board of directors did not breach its fiduciary duties in negotiating the merger. The On2 defendants asserted that the certification of a non-opt-out class was proper since the relief sought in this action was primarily equitable, and there was no demonstration of the need for particular class members to manage individual claims. The On2 defendants asserted that the "due process concerns for the protection of individual class members' unique interests raised in" *Matter of Colt Indus. Shareholder Litig.* (77 NY2d 185 [1991]) were not present here.

The Supreme Court conducted its fairness hearing on October 13, 2010. Several objectors testified with regard to their objections concerning the merger and settlement agreement. The objectors' testimony addressed, among other things, objections to the proposed merger purchase price.

In the order appealed from, entered July 25, 2012, which was made upon a decision of the same court dated January 10, 2012, the Supreme Court declined to approve the proposed settlement of the action as a non-opt-out class action.

The Supreme Court did find that the proposed class was properly defined, and that the class met the requirements of CPLR 901 (a). The court also concluded that the action should proceed as a class action, based on the considerations set forth

in CPLR 902. The court concluded that the proposed settlement agreement itself was fair, adequate, reasonable, and in the best interests of the proposed class.

Nevertheless, the Supreme Court concluded that the certification of the settlement class as a non-opt-out class was not appropriate because out-of-state class members "must be afforded the opportunity to opt-out of the Settlement Class and the settlement . . . so that they can preserve their right to assert claims for damages, if any such claims exist." However, the court specified that class members who were New York residents would not be afforded the opportunity to opt out. The court afforded the parties the opportunity, at their discretion, to submit a revised settlement agreement containing the same terms and conditions as the proposed settlement agreement, but providing for certification of a settlement class that granted proposed class members who were not residents of New York State the right to opt out.

My colleagues in the majority agree with the Supreme Court's denial of the parties' motion to approve the proposed settlement. Since I conclude that the damages at issue here are merely incidental to the equitable relief sought, I conclude that the court was not required to afford any class members the opportunity to opt out. Accordingly, I respectfully dissent, and I would grant the appellants' motion. Moreover, I disagree with the practice of affording only out-of-state class members the opportunity to opt out, while denying that opportunity to in-state class members.

CPLR 901 (a) sets forth the prerequisites which must be satisfied in order for a class to be certified. That section provides,

"One or more members of a class may sue or be sued as representative parties on behalf of all if:

"1. the class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

"2. there are questions of law or fact common to the class which predominate over any questions affecting only individual members;

"3. the claims or defenses of the representative parties are typical of the claims or defenses of the class;

"4. the representative parties will fairly and adequately protect the interests of the class; and

"5. a class action is superior to other available methods for the fair and efficient adjudication of the controversy" (CPLR 901 [a]).

"These factors are commonly referred to as the requirements

of numerosity, commonality, typicality, adequacy of representation and superiority" (*City of New York v Maul*, 14 NY3d 499, 508 [2010]). "Where, as here, a class is certified for settlement purposes only, these prerequisites—and particularly those designed to protect absentee class members—must still be met and, indeed, 'demand undiluted, even heightened, attention' " (*Klein v Robert's Am. Gourmet Food, Inc.*, 28 AD3d 63, 70 [2006], quoting *Amchem Products, Inc. v Windsor*, 521 US 591, 620 [1997]; *see In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F3d 768, 785 [3d Cir 1995]).

"The determination of whether a lawsuit qualifies as a class action under the statutory criteria 'ordinarily rests within the sound discretion of the trial court' " (*City of New York v Maul*, 14 NY3d at 509, quoting *Small v Lorillard Tobacco Co.*, 94 NY2d 43, 52 [1999]). This Court " 'is vested with the same discretionary power and may exercise that power, even when there has been no abuse of discretion as a matter of law by the nisi prius court' " (*City of New York v Maul*, 14 NY3d at 509, quoting *Small v Lorillard Tobacco Co.*, 94 NY2d at 52-53; *see also Matter of State of New York v Ford Motor Co.*, 74 NY2d 495, 501 [1989]).

With regard to the statutory requirements for notice in class actions, CPLR 904 (a) provides that, in class actions which seek primarily injunctive or declaratory relief, notice of the action to the class is not required "unless the court finds that notice is necessary to protect the interests of the represented parties and that the cost of notice will not prevent the action from going forward" (CPLR 904 [a]). In all other class actions, reasonable notice is required (*see* CPLR 904 [b]). New York's statutory scheme contemplates courts exercising their discretion where appropriate in permitting class members to request exclusion from the class, i.e., to "opt out" (*see* CPLR 903). "[B]ecause the disposition of a class action binds class members who do not directly participate in the action, the trial court must act as 'the protector of the rights of the absent class members' (*Polar Intl. Brokerage Corp. v Reeve*, 187 FRD 108, 112 [SD NY 1999]) in deciding whether certification as a class action is appropriate and, if so, whether any proposed settlement 'is fair, reasonable and adequate' " (*Klein v Robert's Am. Gourmet Food, Inc.*, 28 AD3d at 70, quoting *Weinberger v Kendrick*, 698 F2d 61, 73 [2d Cir 1982]; *see* CPLR 908).

"A class action is an exception to the rule 'that one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process' " (*Wyly v Milberg Weiss Bershad &*

*Schulman, LLP*, 12 NY3d 400, 409 [2009] [emphasis omitted], quoting *Hansberry v Lee*, 311 US 32, 40 [1940]). Absent individuals are bound by the decree in the class action " 'so long as the named parties adequately represented the absent class and the prosecution of the litigation was within the common interest' " (*Wyly v Milberg Weiss Bershad & Schulman, LLP*, 12 NY3d at 409, quoting *Phillips Petroleum Co. v Shutts*, 472 US 797, 808 [1985]).

The parties to this appeal discuss at length their divergent interpretations of the Court of Appeals' 1991 decision in *Matter of Colt Indus. Shareholder Litig.* (77 NY2d 185 [1991]). In *Colt*, the Court of Appeals held, in part, "when a class action complaint demands predominantly equitable relief that will necessarily benefit the class as a whole if granted, the Trial Judge is not required to give class members the opportunity to opt out of the class" (*id.* at 187). In *Colt*, the Court of Appeals was, in part, interpreting the United States Supreme Court's decision in *Phillips Petroleum Co. v Shutts* (472 US 797 [1985]). In *Shutts*, a majority of the Supreme Court held, inter alia, that "due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court" (*Phillips Petroleum Co. v Shutts*, 472 US at 812). However, the majority in *Shutts* expressly limited its holding to "those class actions which seek to bind known plaintiffs concerning claims wholly or predominately for money judgments" (*id.* at 811 n 3).

In its analysis in *Colt*, the Court of Appeals noted that, unlike its federal counterpart, CPLR article 9 does not expressly require an opt-out option in certain types of cases (*see Matter of Colt Indus. Shareholder Litig.*, 77 NY2d at 194). The Court of Appeals stated that the "question left open by the Supreme Court's holding in *Shutts*, then, is whether the jurisdictional and due process concerns addressed by that decision effectively eliminate the mandatory class action as a matter of constitutional law, despite the fact that both State and Federal governments have for years recognized the need for mandatory classes where certain types of relief are sought" (*id.* at 194-195). The Court of Appeals concluded that, where a class seeks predominantly equitable relief, it will not be error for a trial court to refuse to grant an out-of-state class member the opportunity to opt out of the class when first certified "because there is no due process right to opt out of a class that seeks predominantly equitable relief" (*id.* at 195). Among other reasons supporting this determination, the Court relied on its conclusion that, where a

class action seeks predominantly equitable relief, the due process rights of the class members, regardless of the nature and extent of their contacts with the forum state, will be adequately protected (*see id.*). In such a scenario, "a judgment benefits the class as a whole, and any interest in promoting individual control of litigation is outweighed by the importance of obtaining a single, binding determination" (*id.*), a hallmark of class actions.

Thus, since the class in *Colt* was seeking predominantly injunctive relief at the time the class action in *Colt* was certified, the trial court had no statutory duty to afford class members the opportunity to opt out of the class, and class members would have had no due process right to opt out (*see id.* at 196).

However, the particular factual circumstances in *Colt* complicated the matter further. A particular class member at issue, James S. Merritt Company (hereinafter Merritt) was a Missouri corporation which, upon learning of the action, requested to be excluded from the class. Additionally, Merritt commenced a separate action in the United States District Court for the Western District of Missouri (*see id.* at 190). Merritt sought to be excluded from the class in New York since it claimed to have a cause of action to recover damages, and the settlement agreement required class members to release all claims against Colt.

The Court of Appeals was particularly troubled by Merritt's lack of contacts with New York in light of the fact that the proposed settlement agreement purported to extinguish the rights of class members to pursue claims for damages (*see id.* at 196). The Court of Appeals thus determined that, while it was permissible for the trial court initially to decline to afford class members the opportunity to opt out when the class complaint demanded predominantly equitable relief, the trial court erred "by seeking to bind an absent plaintiff with no ties to New York State to a settlement that purported to extinguish its rights to bring an action in damages in another jurisdiction" (*id.* at 197). In addition to relying on the flexibility of CPLR article 9 (*see id.* at 196; *see generally City of New York v Maul*, 14 NY3d at 508-509; *Sperry v Crompton Corp.*, 8 NY3d 204, 210 [2007]), the Court of Appeals considered the terms of the settlement agreement at issue, which, while affording relief essentially equitable in nature, "exacted as a price for that relief a concession that the class members could not pursue damage claims based on the merger" (*Matter of Colt Indus. Shareholder Litig.*, 77 NY2d at 197).

Further, the Court expressed its belief that the United States

Supreme Court, in *Shutts*, "intended to afford substantial protections to out-of-State plaintiffs in State class action suits" (*Matter of Colt Indus. Shareholder Litig.*, 77 NY2d at 197). "Although the [United States Supreme] Court held that an absent class member need not possess minimum contacts with the forum State to be bound by a judgment in damages obtained by the class, the Court also required that certain procedural prerequisites be satisfied before the class member could be bound, including an opportunity to be excluded from the class" (*id.*).

The Court of Appeals continued, "By precluding out-of-State class members from litigating damage claims without giving them a chance to opt out of the class, the settlement negated the long-standing practice of distinguishing between class actions for monetary and equitable relief and granting varying degrees of procedural protection depending upon the relief sought. If the class complaint had sought only monetary relief or both substantial monetary relief and equitable relief, *Shutts* would have required that Merritt be given an opportunity to opt out of the class once it was certified. The mere fact that the relief initially demanded was largely equitable should not permit the court to circumvent the Supreme Court's holding in *Shutts* and bind Merritt to a settlement that eliminates constitutionally protected property interests without due process" (*id.* at 198).

The Court of Appeals concluded, "[T]he Trial Judge was not required to give Merritt an opportunity to opt out of the class at the time that the class was certified, because at that juncture, the relief sought was predominately equitable. Given the class complaint as filed, the court properly considered the value of consolidating the action in a single forum and reaching one binding determination. However, once the parties presented the court with a settlement that accorded equitable relief and in turn required the class members to give up all claims in damages, the nature of the adjudication changed dramatically. We conclude that the trial court erred when it approved a settlement of this kind without affording Merritt the due process protections outlined in *Shutts*" (*id.* at 199).

The On2 defendants rely on *Colt* for the proposition that opt-out rights are not required in class actions involving predominantly equitable relief. Further, the On2 defendants assert that due process only requires a court to afford class members the opportunity to opt out when seeking to assert a claim for damages where that claim is for "individualized monetary relief," as opposed to money damages that are incidental to the equitable relief sought or to the relief awarded to the class as a whole.

Conversely, the objectors assert that the claims for damages that they seek to preserve are of the same nature as those at issue in *Colt*, separate and distinct from the predominantly equitable relief sought in the class complaint. The objectors observe that, in *Colt*, the Court of Appeals did not differentiate between "incidental" and "individualized" damages upon which the On2 defendants rely. Rather, they emphasize the Court's holdings addressing the right of certain class members to opt out in order to pursue damages claims. Additionally, the objectors observe that, as in *Colt*, the proposed settlement here purports to grant a release as to all merger-related damages claims in exchange for the relief sought.

It is beyond dispute here that the objectors include a number of out-of-state shareholders of On2 common stock. It is also undisputed that a component of the proposed settlement agreement requires class members to agree to the extinguishment and release of all claims against, among others, On2, arising out of or related to the merger, this action, or the Delaware action.

As was the case in *Colt*, the complaint here seeks primarily equitable relief. As such, because of the "distinct concerns that come into play when a class seeks primarily equitable relief," at the outset, potential class members would not have had any due process right to opt out of the action (*see Matter of Colt Indus. Shareholder Litig.*, 77 NY2d at 195-196).

As was also the case in *Colt*, the settlement agreement here purports to require all class members to release their rights to pursue merger-related damages remedies. Thus, the settlement agreement "impinges upon a distinct right—the right to pursue a claim in damages" (*id.* at 197).

However, a distinction that has arisen in the years since *Colt* was decided leads me to conclude that, in cases such as this, where any claim for money damages is incidental to the equitable relief sought, and requires no individualized adjudications, class members, whether in-state or out-of-state, do not have a due process right to exclusion from the class.

This conclusion is consistent with the United State Supreme Court's opinion in *Wal-Mart Stores, Inc. v Dukes* (564 US —, 131 S Ct 2541 [2011]). In *Dukes*, the United States Supreme Court addressed, inter alia, whether claims for monetary relief may be certified under rule 23 (b) (2) of the Federal Rules of Civil Procedure. That provision of the federal class action rule applies to actions for equitable and declaratory relief. As the Court of Appeals noted in *Colt*, that subsection does not contain a right to notice or to opt out of class actions commenced pursuant thereto (*see Matter of Colt Indus. Shareholder Litig.*, 77

NY2d at 193). In *Dukes*, the United States Supreme Court held that claims for monetary relief may not be certified under Federal Rules of Civil Procedure rule 23 (b) (2) "at least where . . . the monetary relief is not incidental to the injunctive or declaratory relief" (*Wal-Mart Stores, Inc. v Dukes*, 564 US at —, 131 S Ct at 2557). The United States Supreme Court concluded that "claims for *individualized* relief . . . do not satisfy" the requirements of that subsection (*id.*). In this regard, the Court observed that the "key to the (b) (2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them. In other words, rule 23 (b) (2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages" (*id.* [citation and internal quotation marks omitted]). The United States Supreme Court concluded that "individualized monetary claims belong in Rule 23 (b) (3)," the subsection of the federal class action rule which does expressly furnish the opportunity for class members to opt out (*Wal-Mart Stores, Inc. v Dukes*, 564 US at —, 131 S Ct at 2558).

Additionally, the United States Supreme Court explained that, in *Allison v Citgo Petroleum Corp.* (151 F3d 402, 415 [5th Cir 1998]), the United States Court of Appeals for the Fifth Circuit held that a rule 23 (b) (2) class "would permit the certification of monetary relief that is 'incidental to requested injunctive or declaratory relief,' " which the Fifth Circuit defined as " 'damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief' " (*Wal-Mart Stores, Inc. v Dukes*, 564 US at —, 131 S Ct at 2560, quoting *Allison v Citgo Petroleum Corp.*, 151 F3d at 415). However, based on the circumstances of the case before it, the United States Supreme Court ultimately did not decide "whether there are any forms of 'incidental' monetary relief that are consistent with the interpretation of Rule 23 (b) (2) we have announced and that comply with the Due Process Clause" (*Wal-Mart Stores, Inc. v Dukes*, 564 US at —, 131 S Ct at 2560).

While the United States Supreme Court did not pass on the Fifth Circuit's analysis, I find it persuasive. Such an interpretation promotes several of the fundamental purposes of class actions, including efficiency and the avoidance of inconsistent

adjudications (*see generally* 1 Newberg on Class Actions § 1:9 [2014]; Weinstein-Korn-Miller, NY Civ Prac ¶ 901.01 [2d ed 2004]). Further, where any money damages are merely incidental to the injunctive or declaratory relief sought, and the class action seeks predominantly equitable relief, the due process rights of the class members, regardless of the nature and extent of their contacts with the forum state, will be adequately protected (*see Matter of Colt Indus. Shareholder Litig.*, 77 NY2d at 195). In such a scenario, "a judgment benefits the class as a whole, and any interest in promoting individual control of litigation is outweighed by the importance of obtaining a single, binding determination" (*id.*).

I note again that, in *Colt*, the Court of Appeals observed that, "at the time this class action was certified, the class was primarily seeking injunctive relief. . . . [T]he court was under no statutory duty to grant Merritt the opportunity to opt out of the class. Because of the distinct concerns that come into play when a class seeks primarily equitable relief, we conclude that there was similarly no due process constitutional right to opt out of the class at the time the class was certified" (*id.* at 196). Here, too, the class action complaint seeks primarily equitable relief.

The circumstances in *Colt* "changed dramatically" once the parties tendered the proposed settlement agreement, which accorded equitable relief and, in exchange, required class members to release all related claims in damages (*id.* at 199). Based on this development, the Court of Appeals concluded that the Supreme Court erred in approving the settlement without affording Merritt certain due process protections, including the right to opt out.

Nonetheless, the only damages at issue here are those that are "incidental to requested injunctive or declaratory relief," in that they are "damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief" (*Allison v Citgo Petroleum Corp.*, 151 F3d at 415). I conclude that, based on this distinction, which only became the subject of appellate-court and scholarly scrutiny after *Colt* was decided, due process does not require the court to afford class members, out-of-state or otherwise, the opportunity to opt out (*see* Robert H. Klonoff, *Class Actions for Monetary Relief Under Rule 23 [b] [1] [A] and [b] [1] [B]: Does Due Process Require Notice and Opt-Out Rights?*, 82 Geo Wash L Rev 798, 822 [2014] ["reasonable notice should be required in all (b) (1) (A) and (b) (1) (B) suits seeking money, but . . . opt-out rights are not required by due process—and indeed, would defeat the purpose of (b) (1) suits"]).

I would also analogize this rule—that incidental money damages are available where primarily equitable relief is sought without the need to afford class members the opportunity to opt out—to a class action prosecuted pursuant to rule 23 (b) (2) of the Federal Rules of Civil Procedure, and possibly rule 23 (b) (1) (*see* Robert H. Klonoff, *Class Actions for Monetary Relief Under Rule 23 [b] [1] [A] and [b] [1] [B]: Does Due Process Require Notice and Opt-Out Rights?*, 82 Geo Wash L Rev 798, 815 [2014] ["Finally, some courts have held that a (b) (1) (A) class can be certified for damages as long as claims for declaratory or injunctive relief predominate"]). Again, that subsection applies to actions for equitable or declaratory relief, and does not provide for opt-out rights (*see Matter of Colt Indus. Shareholder Litig.*, 77 NY2d at 193).

Finally, I would note that, even were I to conclude that the monetary damages at issue here required individualized determinations, and were therefore not merely incidental to the injunctive or declaratory relief sought, I would not endorse granting opt-out rights only to out-of-state class members. There appears to be no authority for treating residents and nonresidents differently in relation to opt-out rights (*see* Weinstein-Korn-Miller, NY Civ Prac ¶ 904.05 [2d ed 2004]), and doing so certainly raises concerns of possible due process violations. Indeed, "The concern expressed in *Shutts* goes beyond mere minimum contacts of unnamed class members. At bottom, the concern in *Shutts* is about depriving absent class members of property without due process. That concern is not limited to absent class members who lack minimum contacts with the forum, but applies equally to all absent class members" (Robert H. Klonoff, *Class Actions for Monetary Relief Under Rule 23 [b] [1] [A] and [b] [1] [B]: Does Due Process Require Notice and Opt-Out Rights?*, 82 Geo Wash L Rev 798, 826 [2014] [footnote omitted]).

In circumstances such as those presented here, options available instead of granting opt-out rights to select, but not all, class members, would include declining to certify a nationwide class, or granting the entire class the right to opt out. I do not agree with the disparate treatment of in-state and out-of-state class members implemented by the hearing court here.

In this regard, I fully acknowledge the concern with regard to exercising personal jurisdiction over out-of-state residents in a class action, in the absence of minimum contacts with the forum state, and, as a result, extinguishing that class member's right to pursue a damages remedy (*see e.g. Matter of Colt Indus. Shareholder Litig.*, 77 NY2d at 197). However, once again, I

would emphasize the flexibility of CPLR article 9, and the options available to the courts in overseeing a class action (*see generally City of New York v Maul*, 14 NY3d 499 [2010]). I disagree with the tack approved by the majority here of granting the right to exclusion to some class members while denying it to others.

Since I conclude that the money damages at issue here are merely incidental to the equitable relief sought, I conclude that the Supreme Court was not required to afford any class members the opportunity to be excluded from the class. Accordingly, I respectfully dissent, as I would grant the appellants' motion, made jointly with the plaintiff, for approval of the non-opt-out class. Moreover, I disagree with the practice of affording only out-of-state class members the opportunity to opt out, while denying that opportunity to in-state class members.